EXHIBIT "B"

Mortgage Recording Tax:

After Recording Return To:
COLUMBIA HOME LOANS, LLC
400 COLUMBUS AVENUE
VALHALLA, NEW YORK 10595
Loan Number:

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

EXHIBIT D

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Security Instrument." This document, which is dated   AUGUST 2         , 2005, together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." IRINA KHUTORETSKAYA AND OLEG KHUTORETSKIY

whose address is 115 BADEN PLACE, STATEN ISLAND, NEW YORK 10306                        , sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." COLUMBIA HOME LOANS, LLC

will be called "Lender." Lender is a corporation or association which exists under the laws of
NEW YORK                                           . Lender's address is
400 COLUMBUS AVENUE, VALHALLA, NEW YORK 10595
(D) "Note." The note signed by Borrower and dated   AUGUST 2          , 2005,
will be called the "Note." The Note shows that I owe Lender FOUR HUNDRED FORTY-TWO
THOUSAND AND 00/100          Dollars (U.S. $442,000.00      ) plus interest and other
amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by
SEPTEMBER 1, 2035 .
(E) "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."
(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights
in the Property" sometimes will be called the "Sums Secured."
(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders."
The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                Page 1 of 15             DocMagic eForms 800-649-1362
www.docmagic.com

(I)  "Applicable Law."  All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J)  "Community Association Dues, Fees, and Assessments."  All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K)  "Electronic Funds Transfer."  "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "Escrow Items."  Those items that are described in Section 3 will be called "Escrow Items."

(M)  "Miscellaneous Proceeds."  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.  A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N)  "Mortgage Insurance."  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "Periodic Payment."  The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P)  "RESPA."  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument.  This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property.  I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A)  Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B)  Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C)  Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A)  The Property which is located at  115 BADEN PLACE

                                                   [Street]

STATEN ISLAND                                       , New York  10306

    [City, Town or Village]                                          [Zip Code]

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                     Page 2 of 15                             *DocMagic ELTorms* 800-649-1362
                                                               www.docmagic.com

ny3033.mtg

This Property is in   RICHMOND               County. It has the following legal description:
SEE ATTACHED ADDENDUM: BLOCK 3806 LOT 33

(B)    All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)    All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)    All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)    All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)    All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)    All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

    1.    **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

    Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                    Page 3 of 15                  DocMagic *eForms* 800-649-1362
www.docmagic.com

ALL that certain plot, piece or parcel of land, lying and being in the Borough of Staten Island, County of Richmond, City and State of New York, being bounded and described as follows:

BEGINNING at the point on the northwesterly side of Baden Place distant 160.00 feet northeasterly from the corner formed by the intersection of the northeasterly side of Mapleton Avenue and the northwesterly side of Baden Place;

(1) RUNNING THENCE north 54 degrees 26 minutes 16 seconds west, 100 feet to a point;

(2) THENCE north 35 degrees 33 minutes 44 seconds east, 40 feet to a point;

(3) THENCE south 54 degrees 26 minutes 16 seconds east, 100 feet to the said northwesterly side of Baden Place;

(4) THENCE along the northwesterly side of Baden Place South 35 degrees 33 minutes 44 seconds West, 40 feet to the point or place of BEGINNING.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes And Insurance.**
   (a) **Borrower's Obligations.**
I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
   (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
   (2) The leasehold payments or ground rents on the Property (if any);
   (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
   (4) The premium for Mortgage Insurance (if any);
   (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
   (6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.
After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01
Page 4 of 15
*DocMagic eFarms* 800-649-1362
www.docmagic.com

Ny30334.mtg

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b)     Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c)     Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.     Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on

DocMagic ℰℱℴᵣᵐˢ 800-649-1362
www.docmagic.com

the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01
Page 6 of 15
DocMagic *eFarms* 800-649-1362
www.docmagic.com

Ny30336.mtg

Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.    Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7.    Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a)    Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b)    Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.    Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require

the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01
Page 10 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ny3033310.zig

prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                   Page 12 of 15
DocMagic *eForms» 800-649-1362
www.docmagic.com

Ny303312.mzg

are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires.

Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
IRINA KHUTORETSKAYA       -Borrower

_____ (Seal)
OLEG KHUTORETSKIY         -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                  Witness:

_____   _____

State of New York )
) ss.:
County of WESTCHESTER )

On the 2nd day of AUGUST in the year 2005 , before me, the undersigned,
personally appeared IRINA KHUTORTESKAYA, OLEG KHUTORETSKIY

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

Notary Public State of New York

Print or Type Name

(Seal, if any)                      My Commission Expires:

D. MARIE BEDELL
Notary Public, State of New York
No. 01BE6073237
Qualified in Rockland County
Commission Expires April 15, 2006

Tax Map Information No.:

# FIXED/ADJUSTABLE RATE RIDER
## INTEREST ONLY FOR 10 YEARS
### (LIBOR Index-Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 2nd day of AUGUST, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to COLUMBIA HOME LOANS, LLC

("Lender") of the same date and covering the property described in the Security Instrument and located at:

115 BADEN PLACE, STATEN ISLAND, NEW YORK 10306
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

BORROWER WILL MAKE MONTHLY PAYMENTS OF INTEREST ONLY FOR THE FIRST 120 MONTHS (THE "INTEREST-ONLY PERIOD"). (THE AMOUNT OF SUCH PAYMENTS IS SUBJECT TO CHANGE DUE TO THE FACT THAT THE INTEREST RATE WILL BECOME AN ADJUSTABLE INTEREST RATE IN ACCORDANCE WITH SECTION 4 BELOW.) BEGINNING WITH THE 121ST PAYMENT, BORROWER WILL BE REQUIRED TO MAKE MONTHLY PRINCIPAL AND INTEREST PAYMENTS (THE "PRINCIPAL AND INTEREST PERIOD") IN AN AMOUNT SUFFICIENT TO FULLY AMORTIZE THE UNPAID PRINCIPAL BALANCE AT THE MATURITY DATE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of 5.375 %. The Note also provides for a change in the initial fixed rate to an adjustable rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of SEPTEMBER, 2010 and on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called a "Change Date."

FIXED/ADJUSTABLE RATE RIDER
INTEREST ONLY FOR 10 YEARS
LIBOR INDEX-RATE CAPS
01/01/03

DocMagic *Forms* 800-649-1362
www.docmagic.com

Page 1 of 4

Rfarło.sfs.1.tem

**(B)  The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 500/1000                               percentage points (        2.500 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

During the Principal and Interest Period, as set forth above, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Maturity Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  7.375 % or less than        3.375 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000                               percentage points from the rate of interest I have been paying for the preceding twelve months.  My interest rate will never be greater than        11.375 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1.  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment

FIXED/ADJUSTABLE RATE RIDER
INTEREST ONLY FOR 10 YEARS
LIBOR INDEX-RATE CAPS
01/01/03

*DocMagic eFms* 800-649-1362
www.docmagic.com

Page 2 of 4

Rfario.afx.2.tem

sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.    When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender shall also not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

---

FIXED/ADJUSTABLE RATE RIDER
INTEREST ONLY FOR 10 YEARS
LIBOR INDEX-RATE CAPS
01/01/03                                      Page 3 of 4

DocMagic *eForms* 800-649-1362
www.docmagic.com

Rfazio.xfx.3.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
IRINA KHUTORETSKAYA        -Borrower

_____ (Seal)
OLEG KHUTORETSKIY          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

FIXED/ADJUSTABLE RATE RIDER
INTEREST ONLY FOR 10 YEARS
LIBOR INDEX-RATE CAPS
01/01/03

Page 4 of 4

*DocMagic* 800-649-1362
www.docmagic.com

# SECTION 255 TAX AFFIDAVIT
## (CONSOLIDATION AND EXTENSION AGREEMENT)

STATE OF NY               }

COUNTY OF WESTCHESTER        }

**Kelly Quinn-Ziegler**; being dully sworn deposes and says, I am the representative for **COLUMBIA HOME LOANS, LLC.**          , and makes this affidavit in connection with an application for exemption under section 255 of the Tax Law in the recording of a Consolidation and Extension Agreement between **COLUMBIA HOME LOANS, LLC.,** and Winsome Williams-Douglas.

The Consolidation and Extension Agreement above mentioned covers the following mortgages:

A. Irina Khutorteskaya and Oleg Khutoretskiy

       To: **COLUMBIA HOME LOANS, LLC**        $ 6,458.41
                                                 Dated: 08/02/05

      And which mortgage shall be recorded immediately prior to the said Agreement for which a mortgage tax of $ 113.75 will be paid thereon.
          " **SEE EXHIBIT A ATTACHED HERETO**"

B.

       To: Mortgage Electronic Registration Systems, Inc.,
            As Nominee for Sib Mortgage        $ 443,000.00
                                         Dated: 11/24/03
                                         Recorded: 03/31/04
                                         Reel 17583 Page 326

C.

       To _____       $
                                                   Dated:

EXHIBIT A

THE MORTGAGE GIVEN BY Irina Khutoretskaya and Oleg Khutoretskiy in favor of
Columbia Home Loans, LLC. securing the original principal amount of U.S. $6,458.41
. This mortgage is on a FANNIE MAE/FREDDIE MAC,           STATE OF NEW
YORK at this date the unpaid principal balance secured by the Mortgage is U.S.
$435,541.59. This Mortgage secures a Note date August 2, 2005. THIS MORTGAGE
WAS ASSIGNED TO BY ASSIGNMENT OF MORTGAGE DATED
AND RECORDED ON                    , IN THE COUNTY OF Richmond, STATE
OF NEW YORK.

*Mortgage tax of 113.75 to be paid Simultaneously,*

MORTGAGE made by Irina Khutoretskaya and Oleg Khutoretskiy to Mortgage
Electronic Registration Systems, Inc., as Nominee for SIB Mortgage Corp., in the amount
of $443,000.00 dated November 24, 2003 and recorded March 31, 2004 in the Office of
the City Register of Richmond County in Reel 17583 page 326. *Mortgage tax of 8835.00 was duly paid*
*Unpaid balance is 435,541.59*

ASSIGNMENT OF MORTGAGE made by Mortgage Electronic Registration Systems,
Inc. to Columbia Home Loans, LLC dated July 29, 2005 to be recorded simultaneously
herewith in the Office of the City Register of Richmond County.

MORTGAGE dated the 2nd day of August, 2005 made by Irina Khutoretskaya and Oleg
Khutoretskiy in favor of Columbia Home Loans, LLC in the amount of $6,458.41 which
mortgage is intended to be recorded simultaneously herewith in the Office of the City
Register of Richmond County said mortgage is now consolidated with the aforesaid
mortgage in the reduced amount of $435,541.59 by means of a Consolidation, Extension
and Modification Agreement dated Augusts 2, 2005 to form a single lien of $442,000.00
and is intended to be recorded simultaneously herewith in the Office of the City Register
of Richmond County.



Office of the
Richmond County Clerk
130 Stuyvesant Place
Staten Island, NY 10301

Hon. Stephen J. Fiala, County Clerk



ACS-000000000580072-000000000666352-004

## Recording and Endorsement Cover Page

Document Type:     ASSIGNMENT OF MORTGAGE
Document Page Count:     4

| PRESENTER: | RETURN TO: |
|---|---|
| OCEANFIRST BANK<br>975 HOOPER AVE<br><br>TOMS RIVER,NJ 08753 | SALLY CARBONELLO<br>975 HOOPER AVE<br><br>TOMS RIVER,NJ 08753 |

PROPERTY DATA     # OF BLOCKS     1     # OF LOTS     1     # OF ADDL MTG     1

Block     Lot     Unit
3806     33     Entire Lot

## PARTIES

| ASSIGNOR INDEX | ASSIGNEE INDEX |
|---|---|
| COLUMBIA HOME LOANS<br>975 HOOPER AVE<br>TOMS RIVER NJ<br>,NJ 08753 | OCEANFIRST BANK<br>975 HOOPER AVE<br>TOMS RIVER<br>,NJ 08753 |

## PAYMENT DETAIL

Make Checks Payable to:
=================================================================
Richmond County Clerk:                    41.00 Recording Fees

Total Payments For This Document:          41.00
=================================================================

**FEES PAID**

EXAM. AG    MAR 2 0 2016    DATE

LAND DOC# 599038
25-ASSIGN,AGREE,REL

03/31/2016     11:06:06 A.M.
RECEIPT: 14369     FEE: $41.00
RICHMOND COUNTY CLERK

RECORDED IN RICHMOND COUNTY

MAR 31 2016

COUNTY CLERK

Section: 7B
Block: 3806
Lot: 33

## ASSIGNMENT OF MORTGAGE

**COLUMBIA HOME LOANS, LLC F/K/A COLUMBIA EQUITIES, LTD.,** its successors and assigns, having an address at 975 Hooper Avenue, Toms River, New Jersey 08753, Assignor

in consideration of ten and no/100 ($10.00) Dollars and other good and valuable consideration paid by:

**OCEANFIRST BANK** Assignee, having an address of **975 HOOPER AVENUE, TOMS RIVER, NJ** 08753, hereby assigns unto the assignee, the following mortgages as consolidated:

Mortgage (i) made by Irina Khutoreyskaya and Oleg Khutoretskiy, WIFE AND HUSBAND given to MERS AS NOMINEE FOR SIB MORTGAGE CORP. to secure payment of the sum of $443,000.00 Dollars and interest, dated NOVEMBER 24, 2003 and recorded on MARCH 31, 2004 in the Office of the Clerk of the County of Richmond in REEL 17583 AND PAGE 326;

Said mortgage (i) was thereafter assigned by an assignment of mortgage from THE MERS AS NOMINEE FOR SIB MORTGAGE CORP., to COLUMBIA HOME LOANS LLC, as assignee, dated JULY 29, 2005 and which assignment of mortgage was recorded on SEPTEMBER 16, 2005, in the Office of the Clerk of the County of Richmond in LAND DOC#72289;

Mortgage (ii) made by Irina Khutoreyskaya and Oleg Khutoretskiy, given to COLUMBIA Home Loans LLC, to secure payment of the sum of $6,458.41 Dollars and interest, dated August 2, 2005 and recorded on SEPTEMBER 16, 2005, in the Office of the Clerk of the County of RICHMOND in CONTROL NO.: LAND DOC# 72290;

Which mortgages (i) and (ii) were consolidated and modified by a Consolidation, Extension and Modification Agreement to constitute a single lien of $442,000.00 dated AUGUST 2, 2005 made by Irina Khutoreyskaya and Oleg Khutoretskiy, with Columbia Home Loans LLC, and delivered to COLUMBIA HOME LOANS, LLC. and recorded on SEPTEMBER 16, 2005 in the Office of the Clerk of the County of RICHMOND in LAND DOC# 72291;

Which mortgages set forth above are secured by the premises known as and by the street address 115 BADEN PLACE, STATEN ISLAND, NEW YORK, 10306: SEE SCHEDULE A, ATTACHED, FOR LEGAL DESCRIPTION

Together with the bond or obligation described in said mortgages and the moneys due to grow due thereon with interest.

**TO HAVE AND TO HOLD,** the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Assignment is made to and accepted by the Assignee without warranty or representation on the part of the assignor and without recourse to the assignor in any event whatsoever.

IN WITNESS WHEREOF, the Assignor has duly executed the Assignment on January 29, 2016.

Columbia Home Loans, LLC
F/K/A Columbia Equities, LTD.

By:
Christine Schiess
Custodian of Loan Records

STATE OF New Jersey )
)ss.:
COUNTY OF Ocean )

On the  29th   day of  January  in the year 2016 before me, the undersigned, personally appeared
Christine Schiess Custodian of Loan Records, personally known to me or proved to me on the
basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument.

NOTARY PUBLIC

SALLY MARIA CARBONELLO
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES OCT. 14, 2015

Title Number

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, lying and being in the Borough of Staten Island, County of Richmond, City and State of New York, being bounded and described as follows:

BEGINNING at the point on the northwesterly side of Baden Place distant 160.00 feet northeasterly from the corner formed by the intersection of the northeasterly side of Mapleton Avenue and the northwesterly side of Baden Place;

(1) RUNNING THENCE north 54 degrees 26 minutes 16 seconds west, 100 feet to a point;

(2) THENCE north 35 degrees 33 minutes 44 seconds east, 40 feet to a point;

(3) THENCE south 54 degrees 26 minutes 16 seconds east, 100 feet to the said northwesterly side of Baden Place;

(4) THENCE along the northwesterly side of Baden Place South 35 degrees 33 minutes 44 seconds West, 40 feet to the point or place of BEGINNING.

For Informational Purposes Only:  115 BADEN PLACE , STATEN ISLAND, NY 10306

Reference #: 297175060
Record Owner(s): IRINA KHUTORTESKAYA, OLEG KHUTORETSKIY

| DISTRICT: | SECTION: | BLOCK: | 3806 | LOT: | 33 |
| --- | --- | --- | --- | --- | --- |

This Schedule A has been made accessible via our website for review only purposes. The final Schedule will be included with your Title Commitment. Any changes made to the Schedule which have not been sanctioned by our company will not be included in the title policy and therefore will not be insured.

TITLESERV, INC.



Office of the
Richmond County Clerk
130 Stuyvesant Place
Staten Island, NY 10301



ACS-000000000645810-000000000852671-003

Hon. Stephen J. Fiala, County Clerk

Recording and Endorsement Cover Page

Document Type:    ASSIGNMENT OF MORTGAGE
Document Page Count:    3

| PRESENTER: | RETURN TO: |
|---|---|
| SERVICELINK | SERVICELINK |
| 10385 WESTMOOR DR | 10385 WESTMOOR DR |
| STE 100 | STE 100 |
| WESTMINSTER,CO 80021 | WESTMINSTER,CO 80021 |

PROPERTY DATA    # OF BLOCKS  1  # OF LOTS  1  # OF ADDL MTG  2

| Block | Lot | | Unit |
|---|---|---|---|
| 3806 | 33 | Entire Lot | 7B |

PARTIES

ASSIGNOR INDEX
OCEANFIRST BANK NA FKA OCEANFIRST BANK
975 HOOPER AVENUE

TOMS RIVER,NJ 08753

ASSIGNEE INDEX
WILMINGTON SAVINGS FUND SOCIETY
333 SOUTH ANITA DRIVE
SUITE 400
ORANGE,CA 92868

"And Others"

PAYMENT DETAIL

Make Checks Payable to:

========================================================
Richmond County Clerk:    42.00 Recording Fees
-------------------------------
Total Payments For This Document:    42.00
========================================================

# FEES PAID

EXAM      DATE    2·5 JUN 2019

RECORDED IN RICHMOND COUNTY

LAND DOC# 743335
25-ASSIGN,AGREE,REL

06/26/2019    09:48:15 A.M.
RECEIPT: 22611    FEE: $42.00
RICHMOND COUNTY CLERK

JUN 2 6 2019

COUNTY CLERK

Prepared by _Christine Stohr_
OceanFirst Bank, N.A.
975 Hooper Avenue
Toms River, NJ 08753

――――――――――― [Space Above This Line For Recording Data] ―――――――――――

## ASSIGNMENT OF MORTGAGE

County of Richmond, State of New York
APN: Section: 7B Block: 3806 Lot: 33

Assignor:  OCEANFIRST BANK N.A. FORMERLY KNOWN AS OCEANFIRST BANK, whose address is
975 Hooper Avenue, Toms River, NJ 08753

Assignee:  Wilmington Savings Fund Society, FSB, not in its individual capacity but solely in its
capacity as Owner Trustee of Matawin Ventures Trust Series 2018-1, c/o Kondaur
Capital Corporation, having an address of 333 South Anita Drive, Suite 400, Orange, CA
92868.

Original Lender:  Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for SIB Mortgage Corp.

1) Mortgage made by Irina Khutoretskaya and Oleg Khutoretskiy, Wife & Husband dated on November
24, 2003 in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for SIB Mortgage
Corp., the original Principal amount of $443,000.00 and interest recorded on March 31, 2004 in the
Office of the Clerk of the County of Richmond, State of New York, as Instrument Number 26398 in Book
17583, Page 326.

Said Mortgage was assigned from Mortgage Electronic Registration Systems, Inc. ("MERS") to Columbia
Home Loans dated on July 29, 2005 and recorded on September 16, 2005 as Instrument Number 72289.

2) Mortgage made by Irina Khutoretskaya and Oleg Khutoretskiy dated on August 2, 2005 in favor of
Columbia Home Loans. LLC the original Principal amount of $6,458.41 and interest recorded on
September 16, 2005 in the Office of the Clerk of the County of Richmond, State of New York, as
Instrument Number 72290.

3) A Consolidation, Extension and Modification Agreement made between Irina Khutoretskaya and Oleg
Khutoretskiy and Columbia Home Loans, LLC dated on August 2, 2005 consolidating Mortgages 1 and 2
to form a single lien of $442,000.00 was recorded on September 16, 2005 in the Office of the Clerk of
the County of Richmond, State of New York, as Instrument Number 72291.

Said Mortgage was assigned from Columbia Home Loans, LLC F/K/A Columbia Equities, Ltd., to
OceanFirst Bank dated on January 29, 2016 and recorded on March 31, 2016 as Instrument Number
599038.

Said Corrective Assignment of Mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS") as
nominee for SIB Mortgage Corp. to Columbia Home Loans, LLC corrective the assignee on the assignment
that recorded on September 16, 2005 as Instrument # 72289 to be recorded concurrently with said
assignment.

Commonly known as: 115 BADEN PLACE, STATEN ISLAND, NY 10306

*[Assignment Signature Page to Follow]*

*[Assignment Signature Page]*

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns, unto the above named Assignee the said Mortgage, Together with all moneys now owing or that may hereafter become due or owing in Respect thereof, and full benefit of the powers and of all the covenants and Provisions therein contained, and the said Assignor herby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, to the terms contained in said Mortgage and Note.

THIS Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

IN WITNESS WHEREOF, the Assignor has caused these presents to be signed by its duly authorized officer this _30th_ day of October, 2018
November

OCEANFIRST BANK N.A. FORMERLY KNOWN AS
OCEANFIRST BANK

By: _____
Name: Christine Schiess
Title: Assistant Secretary

Acknowledgment by a Person Outside New York State (RPL § 309-b)

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF NEW JERSEY  COUNTY OF OCEAN

November
On October _30_, 2018 before me, Katharine B. Frankovich, Notary Public, personally appeared Christine Schiess, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify that under penalty of perjury under laws of the State of New Jersey that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Notary Seal)
Signature of Notary Public

SALLY MARIA CARBONELLO
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES OCT. 14, 2021



Office of the
Richmond County Clerk
130 Stuyvesant Place
Staten Island, NY 10301



ACS-000000000656858-000000000866772-005

Hon. Stephen J. Fiala, County Clerk

## Recording and Endorsement Cover Page

Document Type: ASSIGNMENT OF MORTGAGE
Document Page Count: 5

| PRESENTER: | RETURN TO: |
|---|---|
| RECORD AND RETURN TITLE AGENCY, INC. | RECORD AND RETURN TITLE AGENCY, INC. |
| 7 DEMPSEY PLACE | 7 DEMPSEY PLACE |
| CTSY-3589-DM | CTSY-3589-DM |
| EASTCHESTER,NY 10709 | EASTCHESTER,NY 10709 |

PROPERTY DATA    # OF BLOCKS    1    # OF LOTS    1
Block    Lot                  Unit
3806    33    Entire Lot

### PARTIES

| ASSIGNOR INDEX | ASSIGNEE INDEX |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB | JDRM LLC DBPP, SM, SKP & JD LLC |
| 333 SOUTH ANITA DRIVE | 408 MAIN STREET |
| S 400 | S 502 |
| ORANGE,CA 92868 | BOONTON,NJ 07005 |

### PAYMENT DETAIL

Make Checks Payable to:

================================================================
Richmond County Clerk:                    40.00 Recording Fees **FEES PAID**
                        --------------------
Total Payments For This Document:         40.00
================================================================

EXAM _____ DATE __8/7/19__

LAND DOC# 747807
25-ASSIGN,AGREE,REL

08/15/2019    11:43:27 A.M.
RECEIPT: 28218    FEE: $40.00
RICHMOND COUNTY CLERK

RECORDED IN RICHMOND COUNTY

AUG 1 5 2019

COUNTY CLERK

*Block 3806 Lot 33*
*Richmond Cty*

WHEN RECORDED MAIL TO:
JDRM LLC DBPP, SM, SKP & JD LLC
408 MAIN ST STE 502
BOONTON, NJ 07005-3701

_____[Space Above This Line For Recording Data]_____

## ASSIGNMENT OF MORTGAGE

APN/Parcel Number: Section: 7B Block: 3806 Lot: 33
County of Richmond State of New York

**Assignor:** Wilmington Savings Fund Society, FSB, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2018-1, whose address is 333 South Anita Drive, Suite 400, Orange, CA 92868

**Assignee:** JDRM LLC DBPP, SM, SKP & JD LLC, whose address is 408 MAIN ST STE 502, BOONTON, NJ 07005-3701.

**Original Lender:** Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for SIB Mortgage Corp.

Mortgage made by IRINA KHUTORSSKAYA AND OLEG KHUTORETSKIY, Wife and husband dated November 24, 2003 in the amount of $443,000.00 and interest recorded on March 31, 2004 in the Office of the Clerk of the County of Richmond, State of New York, as Instrument Number 26398, in Book 17583 on Page(s) 326.

Legal Description: SEE EXHIBIT "A" ATTACHED

Chain of Title: SEE ATTACHED

Commonly known as: 115 BADEN PLACE, STATEN ISLAND, NY 10306

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns, unto the above named Assignee the said Mortgage, Together with all moneys now owing or that may hereafter become due or owing in Respect thereof, and full benefit of the powers and of all the covenants and Provisions therein contained, and the said Assignor herby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

**TO HAVE AND TO HOLD** the said Mortgage and Note, and also the said property unto the said Assignee forever, to the terms contained in said Mortgage and Note.

*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

*IN WITNESS WHEREOF*, the Assignor has caused these presents to be signed by its duly authorized officer this 18th day of July, 2019.

*IN PRESENCE OF*

*[Assignment Signature Page to Follow]*

*[Assignment Signature Page]*

**Wilmington Savings Fund Society, FSB, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2018-1, By Kondaur Capital Corporation, as Separate Trustee**

By: _____

Name: Hanh Nguyen

Title: Collateral Manager

Acknowledgment by a Person Outside New York State (RPL § 309-b)

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA       ) ss.:

COUNTY OF ORANGE       )

On July 18, 2019 before me, _____ Tracy Navong _____, Notary Public, personally appeared **Hanh Nguyen** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me and that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify that under penalty of perjury under laws of the State of California that the foregoing paragraph is true and correct.

_____

Notary Public

My Commission Expires:

TRACY NAVONG
Notary Public - California
Orange County
Commission # 2247167
My Comm. Expires Jun 22, 2021

Prepared By: Deborah Williams

Kondaur Capital Corporation

333 South Anita Drive, Suite 400

Orange, CA 92868

Loan Reference Number 673918

**Chain of Title**

Original Lender: Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for SIB Mortgage Corp.

1) Mortgage made by Irina Khutoretskaya and Oleg Khutoretskiy, Wife & Husband dated on November 24, 2003 in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for SIB Mortgage Corp., the original Principal amount of $443,000.00 and interest recorded on March 31, 2004 in the Office of the Clerk of the County of Richmond, State of New York, as Instrument Number 26398 in Book 17583, Page 326.

Said Mortgage was assigned from Mortgage Electronic Registration Systems, Inc. ("MERS") to Columbia Home Loans dated on July 29, 2005 and recorded on September 16, 2005 as Instrument Number 72289.

Said Corrective Assignment of Mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for SIB Mortgage Corp. to Columbia Home Loans, LLC corrective the assignee on the assignment that recorded on September 16, 2005 as Instrument# 72289 dated on November 30, 2018 and recorded on May 06, 2019 as Instrument Number 738117.

2) Mortgage made by Irina Khutoretskaya and Oleg Khutoretskiy dated on August 2, 2005 in favor of Columbia Home Loans, LLC the original Principal amount of $6,458.41 and interest recorded on September 16, 2005 in the Office of the Clerk of the County of Richmond, State of New York, as Instrument Number 72290.

3) A Consolidation, Extension and Modification Agreement made between Irina Khutoretskaya and Oleg Khutoretskiy and Columbia Home Loans, LLC dated on August 2, 2005 consolidating Mortgages 1 and 2 to form a single lien of $442,000.00 was recorded on September 16, 2005 in the Office of the Clerk of the County of Richmond, State of New York, as Instrument Number 72291.

Said Mortgage was assigned from Columbia Home Loans, LLC F/K/A Columbia Equities, Ltd., to OceanFirst Bank dated on January 29, 2016 and recorded on March 31, 2016 as Instrument Number 599038.

Said Mortgage was assigned by OCEANFIRST BANK N.A. FORMERLY KNOWN AS OCEANFIRST BANK, Assigned to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2018-1 by Assignment dated on November 30, 2018 ~~will be~~ recorded ~~concurrently.~~ 6-28-2019 in Land Doc. T4333·5



EXHIBIT "A"

LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, lying and being in the Borough of Staten Island, County of Richmond, City and State of New York, being bounded and described as follows:

BEGINNING at the point on the northwesterly side of Baden Place distant 160.00 feet northeasterly from the corner formed by the intersection of the northeasterly side of Mapleton Avenue and the northwesterly side of Baden Place;

(1) RUNNING THENCE north 54 degrees 26 minutes 16 seconds west, 100 feet to a point;

(2) THENCE north 35 degrees 33 minutes 44 seconds east, 40 feet to a point;

(3) THENCE south 54 degrees 26 minutes 16 seconds east, 100 feet to the said northwesterly side of Baden Place;

(4) THENCE along the northwesterly side of Baden Place South 35 degrees 33 minutes 44 seconds West, 40 feet to the point or place of BEGINNING.

For Informational Purposes Only: 115 BADEN PLACE , STATEN ISLAND, NY 10306

Reference #: 297175060
Record Owner(s): IRINA KHUTORTESKAYA, OLEG KHUTORETSKIY

DISTRICT: _____      SECTION: _____      BLOCK: 3806 _____      LOT: 33 _____

This Schedule A has been made accessible via our website for review only purposes. The final Schedule will be included with your Title Commitment. Any changes made to the Schedule which have not been sanctioned by our company will not be included in the title policy and therefore will not be insured.

RECORDED AT THE REQUEST OF
RECORD & RETURN TITLE AGENCY, INC.
TITLE # _____3509_____
THRU: __ORT__ __WLT__ _____
     ✓ COURTESY RECORDING